**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| LAURA L. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1162 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Laura L. Jackson, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 8, 11; see also Docket Entry 9 (Plaintiff's Memorandum); Docket Entry 12 (Defendant's Memorandum)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging an onset date of January 22, 2009. (Tr. 203-04.) Upon denial of that application initially (Tr. 73-87, 110-14) and on reconsideration (Tr. 88-106, 116-20), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 121-22). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 35-72.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 8-28.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through September 30, 2016.

2. [Plaintiff] has not engaged in substantial gainful activity since January 22, 2009, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: degenerative disc disease; spinal disorder; fibromyalgia; somatoform disorder and depressive disorder.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.  .  .  .  [Plaintiff] has the residual functional
capacity to perform light work . . . except she can
occasionally climb ramps and stairs but never climb
ladders, ropes or scaffolds. [Plaintiff] can occasionally
balance, stoop, kneel, crouch and crawl.  She can
occasionally reach overhead, bilaterally, but otherwise
has no limitations with reaching, fingering, feeling or
handling. [Plaintiff] should avoid concentrated exposure
to extreme cold and extreme heat as well as vibration,
hazardous machinery and heights. Finally, [Plaintiff] is
capable of performing simple, routine tasks, in a task
oriented, non-production pace job, where she can interact
appropriately with others.

.  .  .

6.  [Plaintiff] has no past relevant work.

.  .  .

10. Considering [Plaintiff's] age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [Plaintiff] can perform.

.  .  .

11. [Plaintiff] has not been under a disability, as
defined in the [] Act, from January 22, 2009, through the
date of this decision.

(Tr. 13-27 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Even given those limitations, the Court should remand this case for further administrative proceedings.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age,

---

[2] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of

(continued...)

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "the ALJ [failed to] give a complete function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] difficulties in the broad areas of functioning and [failed to] make a complete finding as to [Plaintiff's] mental [RFC]" (Docket Entry 9 at 2 (bold font omitted)); and

(2) "the ALJ accepted . . . vocational testimony that apparently conflicts with the [Dictionary of Occupational Titles ("DOT")] yet she failed to obtain an explanation from the [VE]" (id. at 10 (bold font omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 12 at 3-14.)

### 1. Mental RFC

In Plaintiff's first assignment of error, she contends that "the ALJ [failed to] give a complete function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] difficulties in the broad areas of functioning" (Docket Entry 9 at 2), in violation of Social Security Ruling 96-8p, Policy

---

[5] (...continued)
the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"), and Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) (see Docket Entry 9 at 2-10). In particular, Plaintiff attacks the sufficiency of the mental RFC in three respects: the ALJ (1) did not "account for [Plaintiff's] difficulties with concentration, persistence or pace [("CPP")]" or "make a finding as to [her] ability to stay on task" (id. at 4 (bold font omitted)); (2) failed to make a reviewable finding as to Plaintiff's social functioning and failed to complete a "detailed assessment of the effect of [Plaintiff's] difficulties in social functioning on her ability to engage in work activities" (id. at 8 (internal quotation marks omitted)); and (3) neglected to "provide an explanation of the effect of [Plaintiff's] restrictions in activities of daily living on her ability to engage in work activity" (id. at 9 (bold font omitted)). Plaintiff's contentions miss the mark.

At steps two and three of the SEP, the ALJ must assess the degree of functional limitation resulting from Plaintiff's mental impairments pursuant to criteria in the corresponding mental disorders in the listing of impairments. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c)(2). As relevant to the instant case, paragraphs B of Listings 12.04 ("Affective [D]isorders") and 12.07 ("Somatoform [D]isorders") each contain four broad functional areas: 1) activities of daily living;

2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04B & 12.07B; see also 20 C.F.R. § 404.1520a(c)(3). The ALJ's decision must include a specific finding of the degree of limitation in each of those functional areas. 20 C.F.R. § 404.1520a(e)(4). However, the paragraph B criteria limitations do not constitute an RFC assessment. SSR 96–8p, 1996 WL 374184, at *4 (emphasis added). Rather, the ALJ uses those limitations to evaluate the severity of Plaintiff's mental impairments at steps two and three of the SEP. Id.

"The mental RFC assessment used at steps 4 and 5 of the [SEP] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C," id., and includes consideration of Plaintiff's "abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting," id. at *6. Thus, the regulations do not require the ALJ to incorporate word-for-word the limitations found in evaluating the severity of mental impairments into either the RFC or any hypothetical question. See Yoho v. Commissioner of Soc. Sec., No. 98-1684, 1998 WL 911719, at *3 (4th Cir. Dec. 31, 1998) (unpublished) (holding ALJ has no obligation to transfer paragraph B findings verbatim to hypothetical question(s)); accord

<u>Patterson v. Astrue</u>, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (unpublished).

A.    <u>CPP</u>

Plaintiff first maintains that the ALJ failed to account for Plaintiff's moderate deficits in CPP in the mental RFC determination. (<u>See</u> Docket Entry 9 at 4-7.)  In that regard, Plaintiff argues that, pursuant to <u>Mascio</u>, "'an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work . . . [because] the ability to perform simple tasks differs from the ability to stay on task[,] [and] [o]nly the latter limitation would account for a claimant's limitation in [CPP].'"  (<u>Id.</u> at 5 (quoting <u>Mascio</u>, 780 F.3d at 638 (internal quotation marks omitted)).) According to Plaintiff, the ALJ's "finding that [Plaintiff] is capable of performing simple, routine tasks, in a task oriented, non-production pace job" does not address Plaintiff's ability to stay on task (<u>id.</u> at 5 (citing Tr. 17, 26)), especially in light of the VE's testimony that mental symptoms that adversely impacted CPP for 20 percent of the workday would preclude all competitive work (<u>id.</u> at 6 (citing Tr. 69)).  Plaintiff's argument falls short.

The United States Court of Appeals for the Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]."  <u>Mascio</u>, 780

F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation adopted by District Judge) (unpublished) (emphasis added). Here, the ALJ's decision provides a sufficient explanation as to why limitations in the RFC to "simple, routine tasks in a task oriented, non-production pace job" (Tr. 17) sufficiently accounted for Plaintiff's moderate limitation in CPP.

First, the ALJ discussed Plaintiff's testimony regarding her mental symptoms (see Tr. 18), but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible" (Tr. 21), and that Plaintiff's "claims of loss of a capacity to concentrate and [] memory loss are not clearly indicated in any examination" (Tr. 22). Plaintiff does not directly challenge the ALJ's evaluation of her subjective complaints. (See Docket Entry 9.)

Second, the ALJ summarized Plaintiff's mental health treatment, making the following, pertinent observations:

- "mental status examinations . . . showed someone who is able to function without evidence of a reduced mental or emotional capacity"

- Plaintiff "was described as having . . . adequate attention and concentration"

- "it does not appear that [Plaintiff] ever sought individual treatment for her mental impairments."

- Plaintiff remained able to work (albeit not at the level of substantial gainful activity) after the alleged onset date despite her mental impairments for several years

(Tr. 22 (emphasis added) (internal citations omitted).)

Third, the ALJ also discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 25-26.) Notably, the ALJ gave "great weight" to the state agency psychological consultants' opinions that, despite moderate deficit in CPP (see Tr. 78, 95), Plaintiff remained "capable of following routine, simple and repetitive tasks" (Tr. 82; see also Tr. 101 (finding Plaintiff "capable of performing simple, repetitive tasks with good understanding and persistence")), and "capable of attention and concentration for at least 2 hours at a time" (Tr. 82-83, 102 (emphasis added)).

Fourth, the ALJ's restriction to "a task oriented, non-production pace job" (Tr. 17) in the RFC "reasonably related to a moderate limitation in Plaintiff's ability to stay on task," Grant v. Colvin, No. 1:15CV515, 2016 WL 4007606, at *6 (M.D.N.C. July 26,

13

2016) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, Jr., C.J.).[6]  In that regard:

> [T]he weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in <u>Mascio</u> supports the view that the non-production restriction adopted in this case sufficiently accounts for [the p]laintiff's moderate limitation in CPP. Moreover, that approach makes sense.  In <u>Mascio</u>, the Fourth Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task."  Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" (not "marked" or "extreme," <u>see</u> 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, <u>Mascio</u> does not require further explanation by the ALJ,

---

[6] The Court recently held that "a mental RFC . . . which prohibits production pace work but allows for '<u>goal oriented work</u>'" did not "sufficiently account[] for [the p]laintiff's moderate limitation in [CPP]."  <u>Williamson v. Colvin</u>, No. 1:14CV884, 2016 WL 1735889, at *7 (M.D.N.C. May 2, 2016) (unpublished) (Auld, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. Aug. 4, 2016) (Biggs, J.). <u>Williamson</u> differs from the instant case in two significant respects. First, the ALJ in <u>Williamson</u> failed to provide an adequate explanation for the moderate limitation in CPP at step three of the SEP, failed to weigh the opinions of the state agency psychological consultants, who each opined that the plaintiff had <u>no</u> limitation in CPP, and erroneously relied on the plaintiff's attendance at secretary classes 25 years prior to the amended onset date to support his mental RFC finding.  <u>Id.</u> at*7-8.  Thus, under the totality of the circumstances, the ALJ failed to adequately explain why a limitation to non-production but <u>goal oriented</u> work sufficiently accounted for moderate limitation in CPP.  <u>Contrast</u> <u>Scott v. Berryhill</u>, No. 1:16CV48, 2017 WL 500000, at *8 (M.D.N.C. Feb. 7, 2017) (unpublished) (Auld, M.J.) (where ALJ expressly found in RFC that the plaintiff could "maintain [CPP] to <u>stay on task for 2-hour periods</u> over the course of a typical 8-hour workday in order to perform [simple tasks]", limitation to "no production-pace or quota-based work, rather a <u>goal-oriented</u> job primarily dealing with things as opposed to people" adequately accounted for moderate limitation in CPP) (first emphasis in original), <u>recommendation adopted</u>, slip op. (M.D.N.C. Mar. 1, 2017) (Eagles, J.).  Second, "<u>goal-oriented</u>" work more closely approximates production or quota type jobs than "<u>task-oriented</u>" work, given that <u>all</u> work, in some degree or respect, entails the performance of "tasks."  Thus, an ALJ precluding production or quota work <u>while still allowing "goal-oriented" jobs</u> must explain why a claimant with moderate deficit in CPP who remains unable to perform production or quota work can still perform "<u>goal-oriented</u>" work.

14

> at least absent some evidentiary showing by the claimant
> (not offered here) that he or she cannot perform even
> non-production-type work because of his or her particular
> CPP deficits.

Grant, 2016 WL 4007606, at *9; see also id. at *7-9 (discussing authority addressing "non-production" restrictions).

Under these circumstances, the ALJ adequately explained why limitations to simple, routine tasks, and a task oriented, non-production pace job (see Tr. 17) sufficiently accounted for Plaintiff's moderate limitation in CPP, see Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced" and that ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, where ALJ relied on the claimant's daily activities and treating physicians' opinions of claimant's mental abilities).

B. Social Functioning

Plaintiff faults the ALJ's decision-making with respect to her ability to function socially in two respects: (1) the ALJ's finding that Plaintiff had "no to mild" difficulties in social functioning (Tr. 16) "prevents meaningful review by the Court," in that it "cannot determine if [that] finding is supported by substantial evidence" (Docket Entry 9 at 7); and (2) the ALJ does not explain or define what she meant by limiting Plaintiff to a job "'where she can interact appropriately with others'" (id. at 8 (quoting Tr. 17)). Those arguments fail.

Plaintiff cites no authority for the argument that an ALJ fails to comply with the regulatory requirement to rate a claimant's degree of limitation in an area of functioning by finding that a claimant has "no to mild" limitation in that functional area. See 20 C.F.R. § 404.1520a(c)(4) (providing that ALJs utilize a "five-point scale" consisting of "[n]one, mild, moderate, marked, and extreme" to "rate the degree of limitation in . . . activities of daily living[,] social functioning[,] and [CPP]"). To the contrary, the Court can meaningfully interpret the ALJ's "no to mild" finding in social functioning as an indication that Plaintiff's difficulties in that area fell, at most, at the lowest end of the mild range. See, e.g., Harris v. Berryhill, No. 1:16CV140, 2017 WL 1755968, at *4 (M.D.N.C. May 4, 2017) (unpublished) (Auld, M.J.) (finding, in similar context, that ALJ's analysis "provides an accurate and logical bridge . . . by concluding . . . that Plaintiff's CPP deficit fell, at most, toward the mild end of the moderate designation" (internal quotation marks omitted)), recommendation adopted, slip op. (M.D.N.C. May 25, 2017) (Biggs, J.).

Plaintiff's contention that the ALJ failed to explain or define her limitation of Plaintiff to a job "where she can interact appropriately with others" (Tr. 17) similarly lacks merit. Read in the context of the record as a whole, the ALJ's finding that Plaintiff "can interact appropriately with others" simply meant

that ALJ did not find that Plaintiff had <u>any</u> specific restrictions arising out of the mild limitation in social functioning. That interpretation finds support in the fact that the ALJ gave "great weight" to the opinions of the state agency psychological consultants (Tr. 25), who each concluded that Plaintiff "<u>should have few social difficulties with peers and supervisors in the performance setting generally being able to interact appropriately with the public, [and] accept constructive criticism from supervisors</u>" (Tr. 83, 102 (emphasis added)), despite <u>mild</u> limitation in social functioning (<u>see</u> Tr. 78, 95).

Moreover, Plaintiff neither disputes the ALJ's finding of mild limitation in social functioning and description of Plaintiff's reported ability to engage in social activities (<u>see</u> Tr. 16), nor makes any attempt to show how a mild limitation in social functioning should have further impacted the ALJ's RFC (<u>see</u> Docket Entry 9 at 7-8). Under such circumstances, the Court can meaningfully review the ALJ's decision-making with regard to Plaintiff's social functioning.

C. <u>Activities of Daily Living</u>

Plaintiff contends that the ALJ did "not discuss what effect, if any, [Plaintiff's] restrictions in activities of daily living have on her ability to engage in work activity on a sustained basis." (<u>Id.</u> at 9.) According to Plaintiff, "[i]f there is no effect on the [RFC] due to the restrictions in [activities of daily

living,] the ALJ needs to explain how she reached that conclusion and identify the evidence that supports that conclusion." (Id. at 10 (citing Mascio, 780 F.3d at 636).) Plaintiff's contention warrants no relief.

As an initial matter, some district courts within the Fourth Circuit have extended the holding in Mascio to require an ALJ to either include restrictions in the RFC arising out of mild limitations in the broad areas of functioning or justify the omission of such restrictions. See, e.g., Ashcraft v. Colvin, No. 3:13CV00417RLVDCK, 2015 WL 9304561, at *9 (W.D.N.C. Dec. 21, 2015) (unpublished) ("[S]ince Mascio was decided, the majority of other courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from 'mild' or 'moderate' limitations in his or her activities of daily living, social functioning, and ability to maintain [CPP] and such limitations are unaccounted for in the RFC, or their absence is unexplained in the analysis surrounding the ALJ's RFC determination, remand is required."); Reinhardt v. Colvin, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (unpublished) ("While the court agrees with the Commissioner's argument that the fact that the ALJ found mild limitations in the paragraph B criteria does not necessarily translate to a work-related functional limitation, Mascio clearly imposes on the Commissioner a duty to explain why such mild mental health impairments found at step two do not

18

translate into work-related limitations when [the] plaintiff's RFC for work is considered."). Assuming that <u>Mascio</u> applies even in the context of <u>mild</u> limitations in the broad areas of functioning (i.e., the lowest of four levels above "none"), the ALJ here sufficiently explained why Plaintiff's mild limitations in daily activities did not translate into further restrictions in the RFC.

Here, Plaintiff neither disputes the ALJ's finding of mild limitation in daily activities (<u>see</u> Tr. 16) and description of Plaintiff's reported daily activities (<u>see</u> Tr. 16, 20, 21, 23, 25), nor makes any attempt to show how a mild limitation in daily activities should have further impacted the ALJ's RFC (<u>see</u> Docket Entry 9 at 9-10). Further, the ALJ gave "great weight" to the opinion of the state agency psychological consultants (Tr. 25), who each concluded that Plaintiff remained "capable of performing simple, routine tasks with good understanding and persistence" (Tr. 82, 102), despite <u>mild</u> limitation in ability to perform daily activities (<u>see</u> Tr. 78, 95). The ALJ's analysis thus provides "an accurate and logical bridge," <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000), between the finding of mild deficits in daily activities and the RFC determination.

In sum, the ALJ complied with <u>Mascio</u> and supported his RFC determination with substantial evidence.

**2. Conflict Between the VE's Testimony and the DOT**

In Plaintiff's second and final issue on review, she asserts that the ALJ erred by failing resolve two apparent conflicts between the VE's testimony and the DOT in violation of Social Security Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL 1898704, at *1 (Dec. 4, 2000) ("SSR 00-4p"), and <u>Pearson v. Colvin</u>, 810 F.3d 204 (4th Cir. 2015). (<u>See</u> Docket Entry 9 at 10-15.) More specifically, Plaintiff maintains that (1) the Mail Clerk (<u>DOT</u> No. 209.687-026, 1991 WL 671813 (4th ed. rev. 1991)) and Office Helper (<u>DOT</u> No. 239.567-010, 1991 WL 672232) jobs identified by the VE in response to the ALJ's dispositive hypothetical question (<u>see</u> Tr. 67-68) (and adopted by the ALJ (<u>see</u> Tr. 27)) each require <u>frequent</u> reaching, in conflict with the RFC's limitation to <u>occasional</u> overhead reaching bilaterally (<u>see</u> Tr. 17) (Docket Entry 9 at 12-14); and (2) the Mail Clerk job carries a Reasoning Level of 3, <u>DOT</u> No. 209.687-026, 1991 WL 671813, in conflict with the RFC's limitation to simple, routine tasks (<u>see</u> Tr. 17) (Docket Entry 9 at 14-15).

Plaintiff asserts that SSR 00-4p "require[s] the ALJ (not the [VE]) to '[i]dentify and obtain a reasonable explanation' for conflicts between the [VE's] testimony and the [<u>DOT</u>], and to '[e]xplain in the determination or decision how any conflict that

has been identified was resolved.'" (Id. at 11 (quoting SSR 00-4p, 2000 WL 1898704, at *1).)  According to Plaintiff, "the ALJ did not elicit an explanation from the [VE] for these apparent conflicts[,] [n]or did [she] provide a resolution of these apparent conflicts in the written decision."  (Id. at 12 (citing Tr. 27, 67-70).) Plaintiff's arguments have merit and warrant remand.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT].  When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added).  "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's] testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that an "apparent" conflict meant only an "obvious" one).

In this case, the ALJ queried the VE whether an individual with Plaintiff's age, education, and work experience, with the RFC to lift and carry at the light level of exertion, able to occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, occasionally reach overhead bilaterally, and who must avoid concentrated exposure to extreme cold, extreme heat, vibration, hazardous machinery, and heights, could perform any other jobs existing in significant numbers in the national economy. (See Tr. 67.) In response, the VE opined that such an individual would remain capable of performing the jobs of Mail Clerk, Office Helper, and Assembler of Small Products, DOT No. 706.684-022 (Assembler, Small Products), 1991 WL 679050. (See Tr. 68.) The VE then provided the corresponding DOT codes for the three jobs, as well as their incidence in the national economy. (See id.) The ALJ thereafter asked the VE: "Are any of your descriptions or classifications in conflict with the [DOT]?" (Tr. 70), to which the VE responded: "No, your honor" (id.).

The ALJ subsequently issued a decision finding Plaintiff not disabled (see Tr. 8-28), which adopted the VE's testimony as to Plaintiff's ability to perform the Mail Clerk and Office Helper jobs:

> To determine the extent to which [the RFC's non-exertional limitations] erode the unskilled light occupational base, [the ALJ] asked the [VE] whether jobs exist in the national economy for an individual with

22

> [Plaintiff's] age, education, work experience, and [RFC].
> The [VE] testified that given all of these factors the
> individual would be able to perform the requirements of
> representative occupations such as:
>
>> (1) Mail Clerk ([DOT] 209.687-026), which is
>> considered light, unskilled work ([Specific
>> Vocational Preparation ("SVP")] 2), and of
>> which there are approximately 99,140 jobs
>> nationally and 3,370 in North Carolina; and
>>
>> (2) Office Helper ([DOT] 239.567-010), which
>> is considered light, unskilled work (SVP 2),
>> and of which there are approximately 74,060
>> nationally and 1,600 in North Carolina.
>
> Pursuant to SSR 00-4p, [the ALJ] has determined that the
> [VE's] testimony is consistent with the information
> contained in the [DOT].

(Tr. 27 (emphasis added).)

As Plaintiff argues (see Docket Entry 9 at 12), both the Mail
Clerk and Office Helper jobs require frequent reaching, DOT No.
209.687-026 (Mail Clerk), 1991 WL 671813; DOT No. 239.567-010
(Office Helper), 1991 WL 672232. Although the DOT does not
specifically address overhead reaching, under Pearson, an apparent
conflict nevertheless exists between the VE's testimony and the
DOT. In that case, "[t]he ALJ found [the claimant's] nondominant
arm could only occasionally reach upward," but for all three jobs
cited by the VE, "the [DOT] lists frequent reaching as a
requirement." Pearson, 810 F.3d at 210 (emphasis in original).
The court observed: "Although the [DOT] does not expressly state
that the occupations identified by the [VE] require frequent
bilateral overhead reaching, the [DOT's] broad definition of

23

"reaching" means that they certainly *may* require such reaching."
Id. at 211 (emphasis in original).  The court found the ALJ had
failed to resolve the apparent conflict and remanded the case.  Id.
at 211-12.

Pearson controls the instant case and mandates remand.  The
ALJ here neither recognized nor resolved the apparent conflict
between the VE's testimony that an individual limited to occasional
overhead reaching bilaterally could perform the jobs of Mail Clerk
and Office Helper (see Tr. 67-68), and the DOT's description of
those jobs as entailing frequent reaching, DOT No. 209.687-026
(Mail Clerk), 1991 WL 671813; DOT No. 239.567-010 (Office Helper),
1991 WL 672232.  (See Tr. 27, 67-70.)

In response, Defendant does not address Pearson, but contends
that Plaintiff's argument regarding an apparent conflict between
the VE's testimony and the DOT regarding the jobs of Mail Clerk
and/or Office Helper fails for two reasons.  (See Docket Entry 12
at 12-13.)  First, Defendant maintains that "the ALJ's [RFC]
assessment is less limiting than Plaintiff asserts," because the
RFC (and hypothetical question) "included Plaintiff's inability to
do any reaching overhead bilaterally, and otherwise no other
reaching limitations."  (Id. at 12.)  Second, "Plaintiff's
representative did not point out any such conflict while examining
the VE" (id. (citing Tr. 70)), and thus Plaintiff "was required to
show that the conflict was 'obvious enough that the ALJ should have

24

picked upon on [it] without any assistance'" (id. (quoting Zirnsak
v. Colvin, 777 F.3d 607, 618 (3d Cir. 2014) (in turn quoting Terry
v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009))). Neither of these
contentions has merit.

First, although Defendant claims Plaintiff misidentified the
ALJ's reaching limitation, Defendant erroneously states that the
RFC and hypothetical question "included Plaintiff's inability to do
any reaching overhead bilaterally." (See id. (emphasis added).)
In fact, the ALJ limited Plaintiff to occasional overhead reaching
bilaterally (see Tr. 17), and Plaintiff correctly described that
limitation in brief (see Docket Entry 9 at 12).

Second, the Pearson court, in interpreting the language of SSR
00-4p, placed the burden of identifying apparent conflicts between
the VE's testimony and the DOT squarely upon the ALJ, and expressly
rejected the Commissioner's position that such burden only arises
in connection with "obvious" conflicts. Pearson, 810 F.3d at 209
(holding that "[t]he ALJ independently must identify . . . where
the [VE's] testimony seems to, but does not necessarily, conflict
with the [DOT]" (emphasis added)); see also id. (rejecting the
Commissioner's argument that an "apparent" conflict meant only an
"obvious" one). Thus, although the Third and Seventh Circuits (as
evidenced in the Zirnsak and Terry decisions) may take a different
approach, those cases do not control here.

Defendant further asserts that "Plaintiff only refers to two of the seven jobs that the VE identified at the hearing, and Plaintiff does not allege that any of the other five jobs that the VE identified apparently conflicted with the [DOT]." (Docket Entry 12 at 10.) In that regard, Defendant points out the VE's testimony that Plaintiff could perform her past relevant work as a Housekeeping Cleaner (see Tr. 67), the light, unskilled job of Assembler of Small Products, as well as the sedentary, unskilled jobs of Order Clerk, Charge-Account Clerk, and Document Preparer (see id. at 11 (citing Tr. 67-69, and 20 C.F.R. § 404.1567(b) (providing that, if an individual can perform light work, that individual can also perform sedentary work))), but that "Plaintiff does not argue that her reaching limitations preclude her from performing these . . . unskilled jobs" (id.). Defendant's contentions fail for two reasons.

First, the VE did testify in response to the dispositive hypothetical that Plaintiff could perform both her past relevant work as a Housekeeping Cleaner and the job of Assembler of Small Products (see Tr. 67-68), and did testify in response to a second hypothetical limiting the individual to two hours of standing and/or walking in an eight-hour workday that such an individual could perform the jobs of Order Clerk, Charge Account Clerk, and Document Preparer (see Tr. 68-69). However, the ALJ neither adopted any of those jobs at steps four and five of the SEP in her

decision (see Tr. 26-27), nor included a restriction to two hours of standing and/or walking in the RFC (see Tr. 17).

Second, and more significantly, the DOT reflects that all of those jobs require frequent reaching, DOT No. 323.687-014 (Cleaner, Housekeeping), 1991 WL 672783; DOT No. 706.684-022 (Assembler, Small Products), 1991 WL 679050; DOT No. 209.567-014 (Order Clerk, Food and Beverage), 1991 WL 671794; DOT No. 205.367-014 (Charge-Account Clerk), 1991 WL 671715; DOT No. 249.587-018 (Document Preparer, Microfilming), 1991 WL 672349. Thus, even had the ALJ adopted those jobs, the same apparent conflict would exist between the VE's testimony and the DOT.

In short, the ALJ failed to comply with SSR 00-4p and Pearson by neglecting to identify and resolve the apparent conflict between the VE's testimony that an individual limited to occasional overhead reaching bilaterally could perform the jobs of Mail Clerk and Office Helper (see Tr. 67-68), and the DOT's description of those jobs as entailing frequent reaching, DOT No. 209.687-026 (Mail Clerk), 1991 WL 671813; DOT No. 239.567-010 (Office Helper), 1991 WL 672232. (See Tr. 27, 67-70.)

In light of the recommendation to remand the case, and the likelihood that, upon rehearing, the ALJ will pose new hypothetical questions to a VE, the Court need not address Plaintiff's argument that an apparent conflict also exists between the VE's testimony that an individual limited to simple, routine tasks could perform

27

the jobs of Mail Clerk and Office Helper (see Tr. 67-68), and the DOT's description of those jobs as requiring a Reasoning Level of 3, DOT No. 209.687-026 (Mail Clerk), 1991 WL 671813; DOT No. 239.567-010 (Office Helper), 1991 WL 672232. (See Docket Entry 9 at 14-15.) However, because the Fourth Circuit has not specifically addressed whether a conflict exists between a limitation to simple, routine tasks and jobs with a Reasoning Level of 3, and because this Court has found that such a conflict indeed exists, see Mullis v. Colvin, No. 1:11-cv-22, 2014 WL 575722, at *9-11 (M.D.N.C. Feb. 11, 2014) (unpublished) (Webster, M.J.), recommendation adopted, (M.D.N.C. May 29, 2014) (unpublished) (Osteen, Jr., C.J.), the ALJ should expressly resolve any such conflict on remand.[7]

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent this Recommendation. As a result, Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding

---

[7] Although not argued by either party (see Docket Entries 9, 12), the ALJ also neglected to include in the dispositive hypothetical question any of the mental limitations she included in the RFC (compare Tr. 17, with Tr. 67-68). That omission additionally renders the ALJ's step five finding unsupported by substantial evidence.

the Cause for a Rehearing (Docket Entry 8) should be granted in part (i.e., to the extent it requests remand as to conflicts between the VE's testimony and the DOT) and Defendant's Motion for Judgment on the Pleadings (Docket Entry 11) should be denied.

        /s/ L. Patrick Auld
            **L. Patrick Auld**
    **United States Magistrate Judge**

August 1, 2017